IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00705-LTB-MEH

BRIAN LEE,

        Applicant,

v.

JOE ORTIZ, Executive Director, Colorado Department of Corrections,
AL ESTEP, Warden, and
JOHN SUTHERS, Attorney General of the State of Colorado,

        Respondents.

---

## RECOMMENDATION FOR DISMISSAL

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Applicant's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket #5].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R 72.1.C, this matter has been referred to this Court for recommendation.  For the reasons set forth below, the Court recommends that the Application be **denied**.

## I.      Facts

      Applicant Brian Lee was convicted in 1993 in Denver District Court of first degree extreme indifference murder, three counts of attempted first degree extreme indifference murder, second degree assault, conspiracy to commit first degree assault, and conspiracy to commit menacing. Applicant was sentenced to life in prison without the possibility of parole plus fifty years for an incident occurring on June 13, 1992.

      The detailed facts of this incident are set forth in an Order by District Judge Marcia S. Krieger denying habeas relief requested by Lee's co-defendant and brother, William Lee. *Lee v. Wakins*, No.

03-72, 2005 U.S. Dist. LEXIS 44501 (D. Colo. Nov. 7, 2005); 03-cv-00072-MSK-PAC, Dock. #57. The Court takes judicial notice of the facts set forth in that Order, *see* Fed. R. Evid. 201, and, other than a short summary, will provide facts only as necessary to address the claims presented herein.

In sum, Applicant, his brother William, Aaron Qualls, and Eric Lightner are members of the "Gangsters of Love" street gang. After an altercation with members of the "Crips" gang outside a nightclub, the four drove to Applicant's house to retrieve two handguns. William stated that they were "about to do some dirt," and Applicant told Qualls that "there is going to be a murder tonight son, you don't need to get involved." Qualls left, and the remaining three returned to where they had previously seen the car driven by members of the "Crips" gang. Upon encountering the vehicle, Applicant drove next to the car on the driver's side, and William and Lightner fired shots into the car, injuring one occupant and killing another. The three returned to Applicant's house, where Applicant informed Qualls that they had shot some people and that William did the shooting.

Applicant appealed his conviction to the Colorado Court of Appeals, which vacated one count of attempted first degree extreme indifference murder and affirmed the remainder his convictions. The Colorado Supreme Court denied Applicant's Writ of Certiorari, and Applicant filed a *pro se* post-conviction motion. He was appointed counsel and, following an evidentiary hearing, was denied relief. The Colorado Court of Appeals affirmed, and the Colorado Supreme Court denied Applicant's Writ of Certiorari. Applicant timely filed the instant Application for Habeas. Applicant presents the following five claims for relief: (1) Applicant was denied a fair trial because the complicity jury instruction allowed a conviction upon a lesser standard of proof than the law required; (2) Applicant was denied effective assistance of trial counsel; (3) Applicant's right to due process was violated by the trial court's refusal to allow a new trial based on newly discovered evidence; (4) the trial court

2

used a constitutionally defective theory of the case which relied on insufficient evidence and resulted in inconsistent verdicts; and (5) Applicant's right to equal protection was violated by the trial court's use of the complicity instruction. Application at pp. 5 – 6(d).

## II.    Discussion

### A.    Standard of Review

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the [applicant] is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the [applicant's] custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan* , 526 U.S. at 845. Accordingly, based on denial of certiorari review by the Colorado Supreme Court in Applicant's case, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals which was the final substantive proceedings in the state appellate review process.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred. *See Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999); *Moore v. Gibson*, 195 F.3d 1152, 1163 (10th Cir. 1999). Under AEDPA, an applicant is entitled to federal habeas relief

only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); *see also, Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

As the Supreme Court recently stated:

> A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*,  544 U.S. 133, 125 S.Ct. 1432, 1438-39 (2005) (internal citations omitted).

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [those] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).  Thus, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, the reviewing court may presume an adjudication on the merits and apply AEDPA deference.  *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Factual findings made by the state trial and appellate courts are presumed correct, with the applicant having the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it."  *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

4

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* and *O'Neal v. McAninch*, 513 U.S. 432 (1995), must be applied. *See Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002). Under *Brecht*, habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. *O'Neal* addresses the situation where a court is in "grave doubt" about the likely effect of the error on the jury's verdict – that is, where "the matter is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. In such a case, *O'Neal* instructs a court to treat the error "as if it had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Brecht*, 507 U.S. at 623).

**B.     Applicant's Claims**

> **1.     Whether Applicant was denied a fair trial because the complicity jury instruction allowed a conviction upon a lesser standard of proof than the law required.**

Applicant argues that the prosecution relied on a complicity instruction to obtain a conviction as principles against all three defendants. Applicant contends that this instruction includes language that was later ruled unconstitutional by the state court, which is error, because the instruction was contested at trial and the evidence of guilt was not overwhelming. Specifically, Applicant contends that the only evidence in support of his conviction is that he was driving the car at the time and that he was not aware of his co-defendants' intentions during the incident. App., p. 5.

The complicity instruction given by the trial court reads as follows:

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:

1.      A crime must have been committed;

2.      Another person must have committed all or part of the crime;

3.      The defendant must have had knowledge that the other person intended to commit all or part of the crime;

4.      The defendant did intentionally aid, abet, advise, or encourage the other person in the commission or planning of the crime.

Response at 15, Exh. G.

The Court of Appeals first found that Applicant did not object to this instruction at trial and reviewed the instruction for plain error, which is the same as the standard listed below for violations of due process. The Court of Appeals held there was no error, because the evidence of Applicant's guilt was overwhelming. The Court explained:

Even if defendant did not shoot the victim, there was sufficient evidence that the knew the passengers in his car would engage in conduct that created a grave risk of death for the occupants of the other car. For example, there was evidence presented at defendant's trial that earlier on the night of the murder defendant had made statements to his cousin that there was going to be a murder that night. In addition, there was evidence that defendant helped his brother and his friend shoot at the passengers in the other car by maintaining his moving car in a position adjacent to the other car for some time and distance during which a number of shots were fired from the vehicle he was driving.

Response, Exh. I, p. 10.

This Court's review of the instruction is limited to "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. The Court of Appeals held that sufficient evidence supported the verdict, and this Court cannot find, based on the evidence presented above, that the jury instruction infected the entire trial so as to

6

violate due process.  Ample evidence supports the conclusion that Applicant had knowledge that his brother and friend intended to and did commit the principal crime.  Thus, the incorrect instruction did not substantially influence the outcome of the trial.  *Turrentine v. Mullin*, 390 F.3d 1181, 1191 (10th Cir. 2004).  Accordingly, the Court of Appeals ruling is not inconsistent with Supreme Court precedent and is not based on an unreasonable determination of facts in light of the evidence presented.

### 2.   Whether Applicant was denied effective assistance of trial counsel.

Applicant claims that he was denied effective assistance of trial counsel in five ways: (1) failure to investigate the fact that the victim was wearing gloves in June that had gunpowder on them; (2) failure to investigate the fact that the victim's car had bullet holes exiting near the victim's location in the car; (3) the use of a unified defense of general denial with co-defendants, even though co-defendant's positions were incompatible; (4) failure to present evidence that Mr. Lightner acted alone to support Applicant's motion for severance; and (5) refusal to allow Applicant to testify in his own behalf.

Applicant argues that these facts would have supported his theory of self-defense.  The Colorado Court of Appeals held that the evidence did not support Applicant's contentions, because his counsel "not only investigated defendant's claim of self-defense, but presented substantial evidence of that defense.  In addition, the jury was instructed on defendant's claim of self-defense." Response, Exh. I, p. 4.  For each of Applicant's claims, the Court of Appeals relied on the credibility determinations made by the lower court, which found Applicant not credible and found his counsel credible as to when trial counsel learned of these events.  Specifically, the lower court found that Applicant did not inform trial counsel that Mr. Lightner acted alone until Applicant's post-conviction

hearing and that Applicant never informed trial counsel or the court during the trial that he wished to testify in his own behalf.

To support a claim of ineffective assistance of counsel, Applicant must show that (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) prejudice to the petitioner, such that but for the error's of counsel, the result at trial would have been different. *Strickland v. Washington*, 466 U.S. 688, 692-93 (1984). The Court of Appeals also applied this standard and concluded that the trial counsel did investigate these issues and did present evidence of self-defense. Although Applicant claims that this additional evidence would have strengthened his claim of self-defense, an eye witness stated at trial that shots were fired from both cars. Traverse, p. 16. In addition, Applicant's additional evidence does not suggest that shots were fired first from the victim before shots were fired from the co-defendants, only that shots were also fired by the victim. Similar evidence was submitted at trial, and this Court cannot find that the additional facts suggested by Applicant would have altered the outcome of the trial. Accordingly, based on the record before the Court of Appeals, this Court does not find the ruling to be inconsistent with Supreme Court precedent or an unreasonable determination of the facts.

Applicant further argues that his counsel used a unified defense, even though his defense was incompatible with theirs. The Court of Appeals concluded that trial counsel had filed a motion to sever the trial, which was denied. The Court of Appeals also noted that there was conflicting evidence as to whether trial counsel "ignored [Applicant's] version of events and pursued a defense contrary to the evidence." Response, Exh. I., p. 5. The Court of Appeals concluded that the credibility determination made by the lower court, finding trial counsel credible on this issue and not Applicant, was appropriate. The Court of Appeals also relied on these credibility determinations in

8

finding that Applicant did not inform trial counsel or the court that he wanted to testify or that Mr. Lightner was the only shooter.

A reviewing court cannot impose its own independent judgment on an issue of credibility to overrule the decision of a court that had the opportunity to view the testimony first-hand. *Bryan v. Gibson*, 276 F.3d 1163, 1171 (10th Cir. 2001), *opinion vacated in part on other grounds on reh'g en banc Bryan v. Mullin*, 335 F.3d 1207 (10th Cir. 2003) (resolving factual issues depends on the factfinder's evaluation of the credibility and demeanor of witnesses). The Colorado Court of Appeals correctly reviewed the record to insure there was support for the trial court's findings. Further, in this court, the deference due to state court's findings under § 2254 includes deference to findings on credibility. *Church v. Sullivan*, 942 F.2d 1501, 1516 (10th Cir. 1991). This presumption of correctness applies not only to express credibility findings, but implied findings as well. *Id.*

With this presumption in mind, the Court notes that trial counsel did seek to sever the trial and, as Applicant explained, presented a unified general denial of self-defense – that the victim was the aggressor. Counsel's judgment in this determination was found to be appropriate by the Colorado Court of Appeals, and this Court finds that the result is not contrary to Supreme Court precedent, nor is it an unreasonable determination of the facts in light of the evidence presented. In addition, the credibility determinations of the lower court in finding Applicant failed to provide this alternate theory or to request to testify during the trial, as upheld by the Court of Appeals, is not an unreasonable determination of the facts.

**3.      Whether Applicant's right to due process was violated by the trial court's refusal to allow a new trial based on newly discovered evidence.**

9

Petitioner argues that three new witnesses (Webster, Deas, and Ford) were discovered after the trial that were friends of the victim. He claims that Webster would testify that he gave Roberts, the victim, two hand guns earlier that evening; that one of occupants told his friend he was "heated" (armed) that night; that Roberts told Ford the next day that they had been shooting; and that one of the witnesses would testify that the victim pointed a gun at him and that he informed the police of this.

The Colorado Court of Appeals determined that the lower court did not abuse its discretion in finding that Webster was available prior to trial and had been identified by a co-defendant as a potential witness and that this testimony contradicted Webster's prior affidavit, which did not mention the guns. The testimony of Deas and Ford was also contradicted by physical evidence indicating how and where the crime ocurred, as well as by two trial witnesses, whose testimony was corroborated by physical evidence. Response, Exh. I, p. 8-9. The Court of Appeals also upheld the trial court's finding that a reasonable juror would find the trial witnesses more credible than Applicant's proposed witnesses, and, therefore, the new evidence would not likely result in an acquittal.

Under Section 2254, only claims of constitutional violations in the underlying criminal proceedings can be reviewed. "The existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Herrera v. Collins*, 506 U.S. 390, 400 (1993 (citation omitted). Federal habeas review based on new evidence is focused on whether the conviction was based on insufficient evidence. *Id.* Thus, if the determination of guilt in the criminal proceedings is supported by sufficient evidence, no violation of due process has occurred. Here, the new evidence presented by Applicant supports in part his claim of self-defense. Nonetheless, the Court of Appeals concluded that because it contradicted physical evidence at trial,

its submission to the jury would not likely result in an acquittal.  As such, the Court of Appeals properly determined that the verdict was supported by sufficient evidence.  This determination falls squarely within Supreme Court precedent and is not an unreasonable determination based on the evidence.

> **4.**  **Whether the trial court used a constitutionally defective theory of the case which relied on insufficient evidence and resulted in inconsistent verdicts.**

Applicant claims jury instruction number eight, defendant's theory of the case, constructively mandated conviction upon an unlawful statement of the law of the case; allowed insufficient evidence to result in the finding of inconsistent verdicts; deprived Applicant of his presumption of innocence; reduced the prosecutor's burden of proof; and constituted official misrepresentation.  Applicant did not raise this in his first post-conviction motion.  He raised it in his second post-conviction motion, which was denied under state procedural law as successive.

This Court does not review the state appellate court's finding to determine whether or not it is accurate or proper, because errors of state law do not provide grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67-68.  The Colorado Court of Appeals concluded that the second motion was properly denied on a finding under state law that the claims were available at the time of his first post-conviction motion and that these claims were simply a reworking of his claims previously considered and denied.

The doctrine of procedural bar prohibits a federal court from considering a specific claim, if the claim was denied in the state court on independent and adequate state procedural grounds.  "A state court finding of procedural default is independent if it is separate and distinct from federal law." *Maes v. Thomas*, 46 F.3d 979, 985 (10th Cir. 1995).  A finding of procedural default is an adequate

11

state ground if it has been applied evenhandedly "in the vast majority of cases." *Id.* Applicant argues that the ineffective assistance of counsel in post-conviction proceedings is a narrow exception to the procedural bar that prevents default of his claims. *Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1997). Although Applicant raises this ground, Applicant's second motion was not denied on that basis. In fact, the Colorado Court of Appeals notes that this argument was first raised in Applicant's Reply brief on his second appeal. Response, Exh. O, p. 5. Moreover, Applicant's conclusory allegation of ineffective assistance of counsel is not sufficient to warrant application of the narrow exception, just as a conclusory allegation of new law does not satisfy the exception absent support for that allegation. *See Ray v. Simmons*, 125 Fed. Appx. 943, 946 (10th Cir. 2005). Accordingly, the procedural bar, as applied to Applicant's claims by the Colorado Court of Appeals, was an "adequate" state ground because the Colorado courts consistently decline to review claims which are contained in a second or successive post-conviction motion. *See Turman v. Buckallew*, 784 P.2d 774, 780 (Colo. 1989) (quoting Colo.R.Crim.P. 35(c)).

In addition, the procedural bar imposed by the state district court was an "independent" ground because Applicant's failure to comply with state procedural rules was "the exclusive basis for the state court's holding." *Maes*, 46 F.3d at 985. Accordingly, this Court is procedurally barred from considering the Applicant's claim under these allegations unless he can demonstrate "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To demonstrate cause and actual prejudice, Applicant must show that efforts to raise the claim at earlier stages were "impeded" by "some objective factor external to the defense," for example, where "the factual or legal basis for a claim was not reasonably available to counsel" during earlier

12

proceedings. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). The standard is an objective one, asking not what a particular attorney or *pro se* applicant actually knew but whether the claim was "reasonably available" upon diligent inquiry. *Id*. at 494, 496. Applicant presents no evidence that the claim was not reasonably available during his first post-conviction motion, thus leaving this claim procedurally barred.

To demonstrate a fundamental miscarriage of justice, Applicant must demonstrate that a constitutional error has probably resulted in the conviction of one who is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). Applicant has not done so. Applicant objects to the instruction as allowing a conviction if only part of the elements of the crime are met and as reducing the burden of proof by assuming he was present at the scene. However, the Court's analysis of the first claim regarding the complicity instruction negates the first inference and Applicant's own statements regarding self-defense negate the second inference. Accordingly, Applicant was not prejudiced by this jury instruction or the theory of the case.

> **5. Whether Applicant's right to equal protection was violated by the trial court's use of the complicity instruction.**

Applicant claims the complicity instruction violated his right to due process, because the indictment did not include a complicity charge. Applicant states this charge did not enter the case until after the evidentiary phase of the trial. At that time, the court allowed the prosecution to charge the jury with the elements of complicity. On this claim as with claim four, Applicant did not raise this issue until his second post-conviction motion, which was denied under state procedural law as successive. Response, Exh. O, pp. 3-4. Based on the analysis above, this claim is also procedurally barred.

13

Again, Applicant fails to establish cause for why this claim was not available at the time of his first motion, nor does allowing a conviction on the theory of complicity work a fundamental miscarriage of justice. The evidence is sufficient to show that the prosecution satisfied all elements of the offenses charged and that Applicant had knowledge of each element and intended to aid the principal in each element of the offenses charged.

## III.    Conclusion

In viewing the merits of the Applicant's claims, he is not entitled to relief under 28 U.S.C. § 2254. Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required. Accordingly, for the reasons stated above, the Court RECOMMENDS that the Application for a Writ of Habeas Pursuant to 28 U.S.C. § 2254 [Filed April 14, 2006; Docket #5] be **denied**, and that this case be dismissed with prejudice. Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[1]

Dated at Denver, Colorado this 24th day of May, 2007.

---

[1] The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

BY THE COURT:


 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge